IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| MARGARET A. KAPPEL, | ) | Civil Action No.: 2:11-CV-3474-SB-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | **COMPLAINT** |
| vs. | ) | **Violation of Title VII/** |
| | ) | **Pregnancy Discrimination Act and** |
| WAFFLE HOUSE, INC., | ) | **Violation of the FMLA** |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

The plaintiff above named, complaining of the actions of the defendant, alleges as follows:

**PARTIES AND JURISDICTION**

1. That plaintiff is a resident and citizen of the County of Berkeley, State of South Carolina.

2. That, upon information and belief, the defendant Waffle House, Inc. ("Waffle House" or "defendant") is a foreign corporation maintaining corporate offices and agents and otherwise conducting business in the County of Charleston, State of South Carolina.

3. That this court has federal question jurisdiction of the above-styled action under 28 U.S.C. §1331 and pursuant to 42 U.S.C. §2000e(k), the Pregnancy Discrimination Act, 42 U.S.C. §2000e-2, 42 U.S.C, §2000e-3, 42 U.S.C. §2000e-5 ("Title VII") and 29 U.S.C. §2601, et seq., the Family Medical Leave Act ("FMLA").

4. That venue for all causes of action stated herein lies in the district of South Carolina, Charleston Division, as all acts alleged took place within the boundaries of the said district and division and all parties hereto reside therein.

1

**CONDITIONS PRECEDENT**

5. That plaintiff has exhausted all administrative remedies and conditions precedent, including timeliness, deferral and all other jurisdictional requirements necessary for the maintenance of the foregoing action, all of which are more fully described below. Moreover, defendant employed fifteen or more employees during all relevant time periods and, thus, defendant is an "employer" as defined by Title VII and the Pregnancy Discrimination Act and is subject to said Acts.

6. That on or about July 28, 2011, and as a result of defendant's discriminatory conduct, all of which is more fully described below, plaintiff timely filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination based on gender and pregnancy.

7. That on or about October 3, 2011, plaintiff received a notice of right to sue from the EEOC regarding the complaint described in Paragraph 6 above.

8. That plaintiff has timely filed the foregoing action within ninety (90) days of the date on which she received the notice of right to sue described above in Paragraph 7.

**FACTUAL ALLEGATIONS**

9. That plaintiff is female.

10. That plaintiff started working for defendant Waffle House back in 1998 when she was 16 years old.

11. That over the years, plaintiff worked at several different Waffle House locations in the Charleston, South Carolina area including locations in Ridgeland, Walterboro and North Charleston (Aviation Avenue and Montague Avenue). Most recently, plaintiff had been working at the Waffle House on Montague Avenue as a Senior Waitress. Plaintiff had

2

worked at that location several years earlier and she returned to that location in or around September of 2009, where plaintiff stayed until her termination.

12. That at the Montague Avenue location plaintiff reported to a Unit Manager named Mark Ledford ("Ledford"). Ledford, in turn, reported to a Division Manager, Steve Merchant ("Merchant") and Merchant reported to a District Manager named Michael Bostwick ("Bostwick").

13. That plaintiff performed her job duties at Waffle House in an above-average fashion and otherwise maintained an excellent employment record there. To this end, plaintiff always received favorable employment evaluations and her managers always told plaintiff she did a good job.

14. That moreover, the length of plaintiff's employment at Waffle House alone indicates that she was a good worker.

15. That in or around February of 2010 plaintiff found out that she was pregnant.

16. That plaintiff is Caucasian. The father is an African-American male that had been together with plaintiff for the previous three years.

17. That the due date for plaintiff's pregnancy was October 10, 2010. Plaintiff planned to work up until the day before she delivered.

18. That in or around March of 2010, plaintiff informed Ledford of her pregnancy.

19. That sometime in early September 2010 during third shift, an African-American couple came into the Montague Avenue Waffle House and was seated at one of plaintiff's tables. The African-American woman was extremely intoxicated and belligerent. She immediately complained that her drink (a Sprite) did not taste right and she demanded that it

be returned without charge. As such, plaintiff got the customer a new drink (an iced tea). The customer again complained that the drink tasted funny and demanded that it be returned with no charge. Plaintiff then brought the customer a third drink (a Coke) with her food. Again the customer complained that the drink tasted funny and also complained that the food was cold. Plaintiff had the cook reheat the customer's food and served it to the customer.

20. That by now the customer was aggressively demanding that she not be charged for the food or drinks. When plaintiff politely explained to the customer that she would have to pay for the meal, the customer became loud and abusive.

21. That then, when plaintiff politely asked the customer to leave, the customer began to scream that she was being asked to leave because she was black; that plaintiff did not like black people; and that plaintiff was refusing to serve her because she was black.

22. That these allegations were absolutely false. Plaintiff did not have any animus towards African-Americans – the father of her child is African-American. And, the customer was being asked to leave because she was creating a disturbance and being unruly – not because of her race.

23. That in all events, a police officer from the City of North Charleston (named Chris) approached the customer to calm her down. The customer began to argue with the police officer. The officer pulled out his handcuffs to let the customer know she was in danger of being arrested. In response, the customer left the restaurant.

24. That there was no manager on duty that night (or morning) on third shift, but when Ledford reported to work plaintiff advised him of the entire incident.

25. That Ledford responded by telling plaintiff not to worry about it; that he knew how customers could get sometimes; and that he knew plaintiff would not refuse to serve

4

someone because of their race. Otherwise, that was the end of the matter. Ledford did not discipline plaintiff in any manner whatsoever for the incident.

26. That also, in or around early September of 2010, plaintiff turned in her maternity leave papers to Ledford. Plaintiff also had her doctor fax leave paperwork to Ledford.

27. That in or around mid-September, plaintiff asked the Division Manager, Merchant, whether her maternity leave papers had gone through. Merchant stated they had not because they were still at the Montague Avenue restaurant. However, shortly thereafter plaintiff was able to get all of her leave paperwork to the correct place and plaintiff's leave was approved from October 10, 2010 to January 5, 2011.

28. That nevertheless, plaintiff let Waffle House know that she could return to work within six (6) weeks – prior to Thanksgiving 2010.

29. That plaintiff ended up working through October 9, 2010. By October 10, 2010, the baby still had not been born, so initially plaintiff stated that she could work on October 10, 2010.

30. That however, on or about October 10, 2010 plaintiff could not work due to the advanced stage of her pregnancy. When plaintiff called Ledford on or about October 10, 2010 to tell him she could not work her shift that day, he said to plaintiff "You need to suck it up and get back to work."

31. That on or about October 12, 2010, plaintiff delivered her baby.

32. That then, on or about October 28, 2010, when plaintiff was still out of work on pregnancy/FMLA leave, Ledford called plaintiff and fired plaintiff allegedly for the incident that happened in early September with the African-American couple. Specifically, plaintiff was told she was being fired for engaging in racist or discriminatory conduct toward the customer.

33. That as stated, this was absolutely false. Plaintiff tried to call Merchant and corporate headquarters for more information, but no one returned her call or even obtained plaintiff's side of the story, or the police officer's account of what happened for that matter.

34. That in addition, other employees who are not pregnant or on leave received numerous customer complaints and were not fired.

### FOR A FIRST CAUSE OF ACTION: VIOLATION OF TITLE VII/THE PREGNANCY DISCRIMINATION ACT 42 U.S.C. § 2000e-2, et seq. and 42 U.S.C. § 2000e(k)

35. That plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 34 hereinabove as fully as if set forth verbatim.

36. That as alleged, defendant employed 15 or more employees during all relevant periods alleged herein and is, therefore, subject to Title VII and the Pregnancy Discrimination Act.

37. That plaintiff became pregnant in or around February of 2010; she advised defendant of her pregnancy in or around March of 2010; and plaintiff went out on pregnancy leave on or about October 10, 2010.

38. That plaintiff performed her job duties with defendant in an above-satisfactory fashion and in a manner that met the defendant's reasonable expectations.

39. That despite the above, on or about October 28, 2010, while plaintiff was out on pregnancy leave, defendant fired plaintiff without warning, notice or cause and for false reasons, all because of plaintiff's gender and because plaintiff was pregnant.

40. That, upon information and belief, defendant replaced plaintiff with a non-pregnant employee.

41. That as such, defendant has fired and discriminated against plaintiff because of plaintiff's gender and because plaintiff was pregnant and has thereby violated Title VII and the Pregnancy Discrimination Act.

42. That as a result of defendant's actions as set forth above, plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, emotional distress, pain and suffering, loss of enjoyment of life, anxiety, depression, humiliation, embarrassment, inconvenience, loss of professional standing, character and reputation, physical and personal injuries, prejudgment interest and has had to incur costs and expenses in the form of attorney's fees.

43. That moreover, defendant's actions as set forth above were undertaken intentionally, willfully, wantonly, knowingly, recklessly, and in utter disregard for plaintiff's federally protected rights and, therefore, plaintiff is entitled to recover punitive damages from defendant.

**FOR A SECOND CAUSE OF ACTION:**
**VIOLATION OF THE FMLA**
**29 U.S.C. §§ 2601 – 2654**

44. That plaintiff hereby repeats and realleges each and every allegation contained in Paragraphs 1 through 43 hereinabove as fully as if set forth verbatim.

45. That pursuant to the FMLA, plaintiff had been employed with defendant for over 12 months, had provided over 1,250 hours of service to defendant during the 12 months prior to her leave and was otherwise employed at a work site where 50 or more employees are employed by defendant within 75 miles of the work site. Thus, plaintiff is an "eligible" employee as defined by the FMLA and covered by the Act.

46. That defendant is engaged in commerce and/or an industry or activity effecting commerce and employs 50 or more employees each working day during each of 20 or

more work weeks in the current or preceding calendar year. As such, defendant is a covered employer as defined by the Act.

47. That plaintiff performed her job duties with defendant in an above-satisfactory fashion and in a manner that met the defendant's reasonable expectations.

48. That plaintiff was pregnant and had exercised her rights under the FMLA by requesting and taking FMLA leave for her pregnancy.

49. That defendant fired plaintiff without warning, notice or cause and for false reasons while plaintiff was out on FMLA leave, all because plaintiff exercised her rights under the FMLA by requesting and taking FMLA leave.

50. That as such, the defendant has violated the FMLA.

51. That as a result of defendant's actions as set forth above, plaintiff has suffered damages in the form of lost back and future wages, income and benefits, expenses associated with finding other work, attorney's fees and costs and prejudgment interest.

52. That moreover, defendant's actions as set forth above were undertaken intentionally, willfully, wantonly, knowingly, recklessly and in utter disregard for plaintiff's federally protected rights and, therefore, plaintiff is entitled to recover liquidated damages from the defendant.

WHEREFORE, plaintiff prays for the following relief against the defendant:

(a) As to the plaintiff's First Cause of Action, for such an amount of actual and special damages as the trier of fact may find (including lost back and future wages, income and benefits, expenses associated with finding other employment, emotional distress, pain and suffering, loss of enjoyment of life, anxiety, depression, humiliation, embarrassment, inconvenience, loss to professional standing, character and reputation and physical and personal injuries), punitive damages, prejudgment interest, the costs and disbursements of this action,

including reasonable attorney's fees and for such other and further relief as the court deems just and proper;

(b)   As to plaintiff's Second Cause of Action, for such an amount of actual and special damages as the trier of fact may find, (including lost back and future wages, income and benefits, expenses associated with finding other employment and economic injury), liquidated damages, prejudgment interest, the costs and disbursements of this action, including reasonable attorney's fees, and for such other and further relief as the court deems just and proper.

HITCHCOCK & POTTS

By: s/A. Christopher Potts
Federal ID No.:  5517
31 Broad Street (P.O. Box 1113)
Charleston, SC 29401 (29402)
Telephone:  (843) 577-5000
Fax:  (843) 722-8512
E-Mail:  hitchp@bellsouth.net
*Attorneys for the Plaintiff*

Charleston, South Carolina
December 21, 2011

9